**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


LORENZO OLIVER, et al.,       :
                              :  Civil Action No. 09-5336 (JLL)
              Plaintiff,      :
                              :
                              :
            v.                :  OPINION
                              :
DEPARTMENT OF HUMAN SERVICES, :
SPECIAL TREATMENT UNIT,       :
et al.,                       :
                              :
              Defendants.     :
```

**APPEARANCES:**

    LORENZO OLIVER, Plaintiff pro se
    # 512
    S.T.U. Annex
    8 Production Way, P.O. Box 905
    Avenel, New Jersey 07001

    Plaintiffs pro se:
    Edward Salerno
    Douglas Minatee
    Matthew Harris
    Richard Bagarozy
    Joseph Elchin
    Ronald Smith
    Dennis Marino
    Victor Acevedo
    Harry Heuser
    Donald Chapman
    Abdus Muslim
    James Tilman
    Darrick Bailey
    Anthony Lowers
    Gilbert Davis
    Richaro Kleiman
    Kevin Davis
    Michael Richter
    Charles Haines
    Clint Walker
    John Greene

Nasir Shakur
Robin Newkirk
Robsami Kelly
George Kelly
Kenneth Jeter
Curtis Perro
Sandy McDonald
Lenwood Brown
Frederick Brown
Robert Quick
Joseph Murray
Albert Borden
Kareem Williams
Walter Harrell
Russell Tripak
Glipen Rivera
Samuel Jefferson
Carl Taylor
Frank Sanchez
Thomas Glover
Daniel Strube
Benjamin Ivery
Frederick Tenner
Joseph Walls
Terry Conn
Paul Winthrop
Keith Caldwell
Leroy Pope
Benito Castro
Dennis Tarby
Carlton Green
Jose Nunez
James William
William Conover
Gamaliel Delgado
Yank McLeod
Dayton Beacher
Paul Vaughn
David Rush
Keith Jackson
Tymil Mason
Raymond Shelton
Monroe Moody
Brian Baldwin
Glenn Rogers
Dean Vincent
Garthe Benjamin
James Cowles

```
        Tom Strumiello
        Ramocitos Ramos
        Maurice Johnson
        at
        S.T.U. Annex
        8 Production Way, P.O. Box 905
        Avenel, New Jersey 07001
```

**LINARES, District Judge**

Seventy-three (73) co-Plaintiffs, civilly-committed[1] residents confined at the S.T.U. Annex, at 8 Production Way, in Avenel, New Jersey, at the time they submitted this Complaint, seek to bring this civil action <u>in forma pauperis</u>, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983.[2]  Plaintiffs name six (6) defendants.[3]

### I.   <u>FACTUAL ALLEGATIONS</u>

Plaintiffs allege that, on March 16, 2009, resident Oliver wrote two letters, one to Commissioner Bruno of the NJDHS, and one to Commissioner Hayman of the NJDOC, complaining that Oliver

---

[1]  Plaintiffs are civilly committed persons under the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:27.24).

[2]  Only one Plaintiff, the lead Plaintiff Lorenzo Oliver, submitted an application for leave to proceed <u>in forma pauperis</u>. The application appears to be incomplete because Oliver has not completed and signed an affidavit of indigency, as required under 28 U.S.C. § 1915(A)(1).

[3]  The named defendants are: the New Jersey Department of Human Services ("NJDHS"), Special Treatment Unit/Annex ("STU/Annex); Dr. Merril Main, Director of Psychology at STU/Annex; Clerke Bruno, Commissioner of NJDHS; Jennifer Velez, Commissioner of NJDHS and the STU; Steve Johnson, Superintendent of the STU/Annex; and George W. Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC").

was engaged in two civil actions in court as a pro se litigant and was unable to complete his legal argument because the law library at the STU/Annex was inadequate. Specifically, he complained that the law library did not have certain books that could assist the residents at STU/Annex with their civil rights litigation, and Oliver provided a list of law books that were needed. (Complaint, ¶¶ 90, 91).

On May 6, 2009, Oliver received a response to his complaint. Oliver was informed that a full Lexis/Nexis computer program was available at STU/Annex, as well as several reference text books, which legal material and access was adequate for the needs of the residents at STU/Annex. (Compl., ¶ 92). However, Oliver alleges that he is unable to find the cases he needs on Lexis/Nexis. (Compl., ¶ 93).

Oliver also alleges that he had informed Superintendent Johnson, on February 17, 2009, that the Lexis/Nexis computer did not function like other Lexis/Nexis computers in other prisons. In response to Oliver's complaint, Johnson asked Oliver to provide a list of legal materials he needed. Oliver sent a list of law books in June 2009. On September 14, 2009, two sets of law books (N.J. Superior and N.J. Reporters) were delivered to the STU/Annex law library, but there has been no response as to the books on the list requested. (Compl., ¶ 94). Specifically,

it appears that Oliver has requested state and federal digest books for him to research issues on his appeal. (Compl., ¶ 95).

On June 5, 2009, Oliver submitted to the Director of Psychology at the STU/Annex, a proposal signed by 93 STU/Annex residents, requesting creation of a residents organization entitled "Residents Legal Association." The proposal also was submitted to the Assistant Administrator of the STU/Annex on June 9, 2009. On July 10, 2009, a month after no response to the proposal, Oliver submitted the proposal to NJDHS Commissioner Bruno and NJDOC Commissioner Hayman. (Compl., ¶¶ 96-98).

On July 21, 2009, the Director of Operation for the NJDOC denied the request to form a Residents Legal Association. The Director stated that "the Department of the Public Advocate has been designated to represent STU resident legal matters." (Compl., ¶ 99).

Oliver alleges that neither the Public Defender's Office or the Public Advocate's Office have filed any federal habeas corpus petitions or civil rights complaints on behalf of the residents at STU/Annex. For instance, both agencies denied representation in an appeal filed in 2007, by STU/Annex residents, to the Superior Court of New Jersey, Appellate Division for reversal of a NJDOC directive that prevented the residents from purchasing laptop computers. The Appellate Division purportedly ordered that the residents be allowed to have laptop computers, but gave

the NJDOC additional time to provide an adequate reason for the directive against allowing residents to use laptop computers. Oliver states that the residents have been unable to enforce that order because they don't have legal representation or an adequate library. (Compl., ¶¶ 100-102).

Oliver next recites individual incidents as to several other residents at STU/Annex. First, on March 11, 2009, resident/plaintiff Harry Heuser was assaulted by two correctional officers. Heuser was not represented at his "MAP"[4] hearing. Heuser wanted to file a civil rights action against the officers but did not know how and allegedly, there is no information in the law library to help him. (Compl., ¶ 103).

Likewise, resident/plaintiff Tymil Mason wanted to file a civil rights complaint after a visit was prevented. When he questioned why the visitor was not permitted to come into the STU/Annex, he was allegedly beat by officers. He was not represented at his MAP hearing. (Compl., ¶ 104).

On February 4, 2009, Oliver was temporarily civilly committed and brought to the STU/Annex. Oliver had been paroled in March 2008 and he wanted to appeal the rescinding of his parole date. Because he could not directly access the Lexis/Nexis computer program, but had to go through a library

---

[4] Oliver does not identify the acronym "MAP", but the Court presumes it refers to a disciplinary proceeding.

worker, the computer allegedly could not pull up the cases he wanted. Thus, Oliver had to use outside sources to finish his appeal. (Compl., ¶ 105).

On August 13, 2005, resident/plaintiff Douglas Minatee filed a habeas corpus petition in federal court. The petition was dismissed as time-barred. The Complaint alleges that the law library has no books or information on filing procedures for habeas petitions. (Compl., ¶ 107). Similarly, residents Kareem Williams and Matthew Harris, respectively, were unable to complete filing a supplemental brief on an appeal from civil commitment and to file a pretrial motion to exclude evidence, because the law library was inadequate to help them. (Compl., ¶¶ 108-109).

Two residents, including plaintiff Ramos, allegedly were threatened by their therapist if they attempted to use the law to protect their rights. (Compl., ¶ 112). Resident Bagarozy alleges that his appeal to the state appellate court concerning a change in the remedy process, was dismissed because he did not understand the law. He claims that if the library had books on court procedure and practice, he would have not had his appeal dismissed. (Compl., ¶ 113).

Oliver generally alleges many residents at the STU/Annex are illiterate or semi-illiterate, and have mental disorders, which makes it almost impossible for them to represent themselves with

respect to civil rights violations.  All of the residents complain that the law library is inaccessible because it is not open everyday, and they must get permission and an appointment to use the law library.  The library is closed on nights and weekends, and is only opened for an hour and a half a day, or every other day.  There are no digest books in the law library, and the residents cannot access the computer directly to do research.  A library worker searches Lexis/Nexis for information requested by residents, and this process allegedly is very restrictive.  Only one computer exists in the library, and only one resident can be present while the computer is being used, which further restricts access.  The library does not receive the New Jersey Law Journal or any other legal periodical that inform residents of changes in the law.[5]  (Compl., ¶¶ 106, 110, 111, 114).

    Plaintiffs assert that the defendants have violated their rights under the First, Sixth, and Fourteenth Amendments, to peaceably assemble and petition the government for redress, to access the courts, and to due process, by denying them the right

---

[5] Oliver also alleges that in the New Jersey prisons, the prisoners are allowed to use the computer themselves without an intermediary library worker.  Further, he alleges that the NJDOC and the NJDHS have provided adequate libraries for the prisons and other mental health facilities, except STU/Annex.  (Compl., ¶¶ 111, 114).

to create a "Residents legal Association."  (Compl., First, Second and Third Causes of Action).

Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages.  Namely, Plaintiffs seek damages in an amount "commensurate to the amount of funds necessary to make the law library at STU Annex adequate," and punitive damages in excess of $150,000.00 to be paid separately and jointly by defendants for intentionally violating Plaintiffs' constitutional rights.  (Compl., "Relief Requested").  Plaintiffs seek class certification.  They also filed a motion for preliminary injunctive relief.

## I.  ANALYSIS

### A.  Request to Proceed as a Class Action

Plaintiffs make a general application for leave to proceed as a class action under Rule 23(a) and (b) of the Federal Rules of Civil Procedure.

Pursuant to Fed.R.Civ.P. 23(a):

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all members *only if*:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

9

(Emphasis added).  "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances."  Baby Neal by Kanter v. Casey, 43 F.3d 48, 55, 30 Fed.R.Serv.3d 1469 (3d Cir. 1994).

Numerosity is the first prerequisite listed in Rule 23(a). Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001).  The United States Court of Appeals for the Third Circuit has previously held that the numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, there are over 70 Plaintiff signatories to the Complaint, which would make joinder of such a large number of plaintiffs impractical.  Consequently, the Court finds that Plaintiffs satisfy the numerosity requirement.  Nevertheless, the Court finds that none of the Plaintiff signatories, except the lead Plaintiff, Lorenzo Oliver, have submitted an application to proceed in forma pauperis.  Consequently, it may be that only Oliver intends to pursue this action, which would defeat the numerosity requirement for class status.

The proposed class also must satisfy the "commonality" requirement under Rule 23(a). To satisfy the commonality requirement, Plaintiffs must put forth at least one common issue of law or fact. Stewart, 275 F.3d at 227; Newton, 259 F.3d at 183; Bay Neal, 43 F.3d at 56. It is not necessary that all putative class members share identical claims. See Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988). "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." Baby Neal, 43 F.3d at 57.

Next, the "typicality" requirement focuses on whether the interests of the named Plaintiffs "align with the interests of the absent members." Stewart, 275 F.3d at 227. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based upon the same legal theory." Baby Neal, 43 F.3d at 58; see also Hoxworth v. Binder, Robinson & Co., Inc., 980 F.2d 912, 913 (3d Cir. 1992). Thus, the Third Circuit has held that:

> The "typicality" and "commonality" prerequisites of Rule 23 do not require that all of the putative class members share identical claims. These prerequisites mandate only that complainants' claims be common, and not in conflict. "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.

11

> Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class, and that the named plaintiff demonstrate a personal interest or "threat of injury ... [that] is 'real and immediate,' not 'conjectural' or 'hypothetical.'"

Hassine, 846 F.2d at 176-77 (citations omitted)(emphasis in original).

In this case, Plaintiffs fail to allege facts sufficient to permit this Court to find that the Complaint satisfies the "commonality" and "typicality" requirements, especially with respect to their denial of access to the courts by failure to provide adequate legal resources. Indeed, prisoners seeking to proceed as a class asserting a claim for denial of access to the courts must allege facts showing "widespread actual injury," Lewis v. Casey, 518 U.S. 343, 349 (1996), that is:

> Because Bounds [v. Smith, 430 U.S. 817 (1977),] did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct.., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

Lewis v. Casey, 518 U.S. at 351. "[T]he injury requirement is not satisfied by just any type of frustrated legal claim," but is limited to cases involving a challenge to the prisoner's

conviction or civil rights action brought to vindicate basic constitutional rights. Id. At 354-55. Here, Plaintiffs allege simply that there is restricted access to a law library or legal resources in general, and that the law library does not contain digest and case books, although it does have Lexis/Nexis available for use. Moreover, they have alleged only a handful of incidents where a claim may have been frustrated by an inadequate law library with respect to over 70 Plaintiff signatories. Thus, Plaintiffs have failed to allege the type of widespread injury that would justify proceeding as a class action.[6]

In addition, as discussed above, the typicality of claims and defenses does not appear to be present in this case with respect to the putative class in view of uniqueness of the legal tests (and corresponding defenses) applicable to the claims raised, i.e., denial of access to the courts. Therefore, this Court finds that the typicality prerequisite is not satisfied by the signatories' application. See Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006)(noting that "class certification [is

---

[6] This Court notes that the lead Plaintiff, Lorenzo Oliver, who apparently drafted the Complaint and motion for preliminary injunctive relief, has alleged that he had to use outside resources to complete his brief on appeal. However, it is plain that he was not precluded from filing his appeal, or this present action, and that he was able to complete his appeal without actual injury to his pending litigation. Consequently, he cannot prove that his pending litigation in both state and federal court have been frustrated or impeded, dismissed, or that he has been prevented from filing lawsuits because of inadequate access to legal resources.

defeated upon showing of] some degree of likelihood [that] a unique defense will play a significant role at trial").

Moreover, in addition to satisfying Rule 23(a), Plaintiffs also must show that the putative class falls under at least one of the three subsections of Rule 23(b). Because Plaintiffs have not established their authority to proceed as representatives of a class under Rule 23(a), this Court need not at this time address the requirements of Rule 23(b).[7]

Therefore, the request to proceed as class representatives will be denied.

B. <u>Joinder</u>

This Court also finds that the claims presented here are not appropriate for joinder in one action. <u>Fed.R.Civ.P.</u> 18(a)

---

[7] This Court notes that class action is less favored where plaintiffs seek monetary damages, as in this case, because any award of damages requires a case-by-case examination of each class members' claims, a process best suited to individual adjudication rather than class action lawsuits. <u>See</u> <u>Garcia v. Aviles</u>, Civil Action No. 08-1855 (JLL), 2008 WL 1943787, *6 n.2 (D.N.J. April 30, 2008); <u>Contawe v. Crescent Heights of Am., Inc.</u>, 2004 WL 2966931 (E.D.Pa. Dec. 21, 2004). Consequently, where plaintiffs seek money damages, the class must satisfy the requirements of Rule 23(b)(3) regarding the issues of predominance and superiority. <u>See</u> <u>Grider v. keystone Health Plan Cent., Inc.</u>, No. 01-564, 2006 WL3825178, *14 (E.D.Pa. Dec. 20, 2006). The predominance requirement under Rule 23(b)(3) is more rigorous than the commonality requirement of Rule 23(a). <u>See</u> <u>McMahon Books, Inc. V. Willow Grove Assocs.</u>, 108 F.R.D. 32, 35 (E.D.Pa. 1985). The superiority requirement must be considered from the point of view of the issues. <u>Katz v. Carte Blanche Corp.</u>, 496 F.2d 747, 760 (3d cir. 1974). Here, this Court finds that neither the predominance or superiority requirements could be met in view of the qualitative differences in potential claims and corresponding defenses, as discussed in this Opinion, <u>supra</u>, at pg. 13, with respect to the typicality requirement under Rule 23(a).

14

controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20 of the Federal Rules of Civil Procedure provides the following regarding permissive joinder of parties:

> (1) Plaintiff.  Persons may join in one action as plaintiffs if:
>     (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all plaintiffs will arise in the action.
> (2) Defendants.  Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit.  See, e.g., Pruden v. SCI Camp Hill, 252 Fed. Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

15

> Despite the broad language of rule 18(a), a plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and May Kay Kane, <u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

In <u>Hagan v. Rogers</u>, 570 F.3d 146 (3d Cir. 2009), the Court of Appeals for the Third Circuit held that <u>in forma pauperis</u> prisoners are not categorically barred from joining as plaintiffs under <u>Fed.R.Civ.P.</u> 20, and further addressed certain considerations applicable to civil cases in which multiple prisoner plaintiffs seek to join in one action pursuant to Rule 20.

"In exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court."  <u>Hagan</u>, 570 F.3d at 157.

Here, where the entire $350.00 filing fee has not been prepaid, the full $350.00 filing fee must be assessed against **each** <u>in forma pauperis</u> co-plaintiff permitted to join under Rule 20, as though each such plaintiff were proceeding individually.

16

Hagan, 570 F.3d at 150. Where multiple co-plaintiffs seek to proceed in forma pauperis, each must submit a complete application, pursuant to 28 U.S.C. § 1915.

Here, as an initial matter, the $350.00 filing fee was not prepaid. As noted previously, only Oliver submitted an application to proceed in forma pauperis, and this application is incomplete because it does not include a signed affidavit of indigency. As all Plaintiffs have failed to meet the filing fee requirements, all applications for leave to proceed in forma pauperis will be denied without prejudice. If Plaintiffs move to re-open this action, or if any Plaintiff chooses to assert his claims in a new separate action, they may file new and complete applications for leave to proceed in forma pauperis.

Finally, Fed.R.Civ.P. 21 provides that, "on motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." As the Third Circuit in Hagan provided new guidelines regarding the procedures applicable to cases in which multiple pro se prisoner plaintiffs seek to proceed jointly, it would not be just, at this time, to sever any improperly joined claims. Instead, Plaintiffs will be given the opportunity to either (1) move to re-open this action, complying with the rules applicable to joinder of claims and parties, including the filing fee requirements, or (2) file new and separate actions asserting their individual claims.

17

C.  <u>Preliminary Injunction</u>

Plaintiffs also filed a motion for a preliminary injunction. To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." <u>Maldonado v. Houston</u>, 157 F.3d 179, 184 (3d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1130 (1999)(as to a preliminary injunction); <u>see also</u> <u>Ballas v. Tedesco</u>, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief. <u>Opticians Ass'n of America v. Independent Opticians of America</u>, 920 F.2d 187 (3d Cir. 1990).  The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  <u>See</u> <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 392 (1981).

Here, at least with respect to the denial of access to courts claim, Plaintiffs have not alleged facts to show 'actual injury."[8]  Consequently, Plaintiffs can not satisfy the first

---

[8] The Court notes that Plaintiffs have conceded that there is a law library, that there is Lexis/Nexis availability (however, it may be that inmates may not be familiar with how to conduct research on the program), that some of the requested legal materials have been provided in the law library, as

18

requirement that they may be likely to succeed on the merits. Moreover, as no one has demonstrated irreparable harm, Plaintiffs cannot satisfy the second requirement showing irreparable harm.

Consequently, because Plaintiffs are unable to establish all four factors necessary for preliminary injunctive relief as required, the motion for preliminary injunctive relief will be denied at this time.

## IV.   CONCLUSION

For the reasons set forth above, all pending applications for leave to proceed in forma pauperis will be denied without prejudice and the Clerk of the Court will be ordered to administratively terminate this action, without filing the Complaint or assessing a filing fee.  Plaintiffs will be granted leave to move to re-open, or file their own individual Complaints, within 30 days.[9]  Any future joint amended Complaint or individual Complaint must comply with the rules for asserting multiple claims by or against multiple parties.  Finally,

---

requested by Plaintiff Oliver.  There also does not appear to be any restrictions against residents offering each other paralegal assistance in bringing civil rights claims, as is evidenced by Oliver's preparation of this lawsuit on behalf of more than seventy (70) residents.

[9]  Such an administrative termination is not a "dismissal" for purposes of the statute of limitations, and if the case is reopened pursuant to the terms of the accompanying Order, it is not subject to the statute of limitations bar if it was originally filed timely.  See Houston v. Lack, 487 U.S. 266 (1988)(prisoner mailbox rule); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); see also Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995).

Plaintiffs' applications for class certification and preliminary injunctive relief are denied.  An appropriate order follows.


                                                /s/ JOSE L. LINARES
                                                United States District Judge
                                                District of New Jersey
Dated: Sept. 22, 2010