**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LORENZO OLIVER

Plaintiff,
v.

DEPARTMENT OF HUMAN SERVICES et al.,

Defendants.

Civil Action No. 09-5336

**OPINION**

**Linares**, District Judge,

This matter comes before the Court by way of two motions to dismiss Plaintiff Lorenzo Oliver's Amended Complaint ("Plaintiff" or "Oliver") pursuant to Federal Rule of Civil Procedure 12(b)(6). The first motion to dismiss is by Defendants Department of Human Services, Special Treatment Unit, Merril Main and Jennifer Velez (collectively "DHS Defendants"). (CM/ECF No. 13). The second is by Defendant George Hayman. (CM/ECF No. 19). In addition, Plaintiff subsequently filed an informal letter application seeking the Court's recusal. (CM/ECF No. 26). The Court has considered the submissions of the parties and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons detailed below, the Court will dismiss Oliver's Amended Complaint for failure to state a claim upon which relief can be granted. Finally, the Court will deny Plaintiff's informal application seeking the Court's recusal.

## I. BACKGROUND

Plaintiff Oliver filed this action under 42 U.S.C. 1983 for alleged violations of his rights "to [f]reedom of [e]xpression, to peacefully [a]ssemble and [d]ue [p]rocess of [l]aw" under the First and Fourteenth Amendments. (Amended Complaint, CM/ECF No. 5, 1) ("Compl."). Plaintiff, a resident at the Special Treatment Unit Annex in Avenel, N.J., asserts that he was deprived of the right "to be allowed to form a non-profit organization called the 'Residents Legal Association.'" Id. As described by Plaintiff, "[t]he purpose of this organization is to be allowed to assist themselves as a group in providing legal services, social advocacy for the protection of their [f]ederal and state [c]onstitutional [r]ights." Id.

As described in the Amended Complaint, the named Defendants are as follows: (1) the Department of Human Services ("DHS"), a state agency of New Jersey, "in charge with the responsibility of care and treatment of sex offenders civilly committed under the New Jersey Sexual Violent Predator's Act . . . at [the Special Treatment Unit] and its Annex" ("STU"); (2) Dr. Merril Main, Director of Psychology at STU, who "is responsible for the over all [sic] care and supervision" of the STU;[1] (3) Jennifer Velez, Commissioner of the STU, who "is responsible for the over all [sic] supervision of the" STU; (4) Steve Johnson, Superintendent of the STU, who "is responsible for the daily running of the institution and the supervision of its employees, policies and procedures"; (5) Clerk Bruno, who "was the Commissioner of the [DHS] . . . responsible for the over all [sic] supervision of [STU] personnel, policies and procedures"; (6) George W. Hayman, Commissioner of the Department of Corrections "DOC", who "is

[1] For the sake of completeness, the Court notes that in the Amended Complaint, Plaintiff states that Dr. Main is the Director of Psychology (Compl. ¶ 3), but the DHS Defendants assert that he is the Director of the STU (DHS Defs.' Mot., 1).

responsible for the daily running and operations of the Department of Corrections. He over see's [sic] and supervises employees at the [STU] for the custody and care of its residents." (Compl. ¶¶ 2-7).

Plaintiff alleges the following facts in his Amended Complaint. On June 5, 2009, Plaintiff allegedly submitted a proposal to Dr. Natali Barone, the Director of Psychology at the STU, which was signed by 93 STU residents "requesting to be allowed to create a residents organization called the "Residents Legal Association." (Compl. ¶ 8). On June 9, 2009, Plaintiff allegedly submitted an additional proposal to the Assistant Administrator of the STU, Steve Johnson, which was also signed by 93 STU residents "requesting to be allowed to create a [r]esident's [o]rganization called the Residents Legal Association." (Compl. ¶ 9) (collectively "Proposal").

Not having received a response, Plaintiff allegedly submitted the Proposal to Clerke Bruno, Commissioner of the DHS, and George Hayman, Commissioner of the DOC on July 10, 2009, approximately thirty days later. (Compl. ¶ 10). On July 21, 2009, the Director of Operations for the Department of Corrections allegedly denied the STU resident's request to be allowed to form the Residents Legal Center, stating: "the Department of Public Advocate has been designed to represent STU residents in legal matters, there for [sic] no further action is necessary at this time." (Compl. ¶ 11).

However, Plaintiff alleges that "[t]he Department of [t]he Public Defender nor the Public Advocate's Office has filed any [f]ederal [h]abeas [c]orpus [p]etitions or civil rights complaints on behalf of the [r]esidents at [STU], even when [r]esidents have requested it. In 2010 the Public Advocate Office was abolished." (Compl. ¶ 13). In support of that allegation, Plaintiff further alleges that "[i]n 2007 [r]esidents at [STU] filed an appeal to the State Appellate Division

requesting that the court reverse an order by the Department of Corrections that prevented [r]esidents from purchasing lab top [sic] computers. Both agencies said that they don't represent residents on these kinds of matter [sic]." (Compl. ¶ 14). "The Appellate Court reversed the [DOC] order denying residents of [STU] from purchasing lab top [sic] computers and gave DOC more time to give the court an adequate reason on why residents should not be allowed to have computers[.]" (Compl. ¶ 15).

On October 19, 2009, Plaintiff Oliver filed this action on behalf of himself and 73 others. On September 22, 2010, this Court entered an Opinion and Order denying Plaintiff's motion to proceed as a representative of a class and denied a motion for a preliminary injunction. (CM/ECF Nos. 2, 3). The Court found Plaintiff's general application for leave to proceed as a class action did not satisfy Federal Rules of Civil Procedure 23(a) and (b). Specifically, it was unclear from the face of the complaint and application to proceed *in forma pauperis* whether plaintiffs satisfied the numerosity, commonality, and typicality requirements of Rule 23(a). Id. at 10, 12.[2] In addition, insofar as the Court construed the complaint as made on behalf of all plaintiffs, the Court found that joinder was inappropriate because "where multiple co-plaintiffs seek to proceed *in forma pauperis*, each must submit a complete application, pursuant to 28 U.S.C. § 1915." Id. at 17.[3] Accordingly, the Court gave plaintiffs the opportunity "to either (1) move to re-open this action, complying with the rules applicable to joinder of claims and parties, including the filing fee requirements, or (2) file new and separate actions asserting their individual claims." Id. at

---

[2] As plaintiffs did not satisfy the requirements under Rule 23(a), it did consider whether plaintiffs met the additional requirements in Rule 23(b).

[3] In addition, as the Court noted at the time, "it may be that only Oliver intends to pursue this action, which would defeat the numerosity requirement for class status." (CM/ECF No. 2, 10).

17. Finally, the Court denied plaintiff's motion for a preliminary injunction because they did not demonstrate irreparable harm or a likelihood of success on the merits. Id. at 18-19.

Plaintiff Oliver submitted an Amended Complaint on behalf of himself on October 26, 2010. On December 20, 2011, this Court entered an Order directing the Clerk to re-open this action and amend the docket to reflect Lorenzo Oliver as the only named Plaintiff. The operative complaint is that filed on October 26, 2010.

Plaintiff asserts the following causes of action: (1) Defendants "with full knowledge of Plaintiffs [sic] [c]onstitutional rights, acted indifferent to those rights by depriving him of this [c]onstitutional right to create an organization within [STU] called the Residents Legal Association, there by [sic] violating his right to [a]ssociation, [f]reedom of [e]xpression. His right and the [r]esidents [sic] right to petition the government on their own for redress, [d]ue [p]rocess and to [p]eacefully [a]ssemble, [i]n violation of the 1st and 14th Amend. U.S. Const."; (2) "Defendants . . . violated the Plaintiffs [sic] [c]onstitutional right to [d]ue [p]rocess by deliberately and intentionally depriving the plaintiff from exercising his right to [a]ssociation by restricting him from creating a Residents Legal Association for the protection and advocacy of the right of [r]esidents at [STU]. The [D]efendants restricted the Plaintiff from exercising his [s]tate and [f]ederal [c]onstitutional rights by acting indifferent to his request to form the Legal Association, in violation of the 1st and 14th Amendment"; (3) "Under [c]olor of [s]tate [l]aw the Defendants, have discriminated against [P]laintiff by depriving him from exercising his right to [a]ssociation by restricting him from creating a Residents Legal Association in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12132." (Compl., ¶¶ 16-18). Plaintiff requests a declaratory judgment that his rights were violated and that he was discriminated against in violation of the Americans with Disabilities Act ("ADA" or the "Act"),

compensatory damages in the amount necessary to furnish and supply the Residents Legal Association, and punitive damages.

On February 22, 2012, Defendants DHS, Merril Main, and Jennifer Velez ("DHS Defendants") filed a motion to dismiss. On March 28, 2012, by way of letter as to why no reply brief was necessary, counsel for the DHS Defendants informed the Court "that [P]laintiff has apparently succeeded in creating a Residents Legal Association without [the DHS Defendants'] assistance." (CM/ECF No. 18). Oliver filed a response letter on May 11, 2012, in which he stated: "The [Residents Legal Association] is a legal [n]on-[p]rofit [c]orporation on paper, it does not have the permission from STU's [o]fficials to function within the facility. The defendants would have to allow the [Residents Legal Association] to operate inside STU. It needs a room within STU and official approval to handle it's [sic] own financial affairs within STU." (CM/ECF No. 20). Defendant George Hayman separately filed a motion to dismiss on April 4, 2012. (CM/ECF No. 19). In addition, as noted above, on May 9, 2012, Oliver wrote to the Court "requesting that the [C]ourt consider recusing it self [sic] from the case." (CM/ECF No. 26).

## II. APPLICATION TO RECUSE

The decision of whether to recuse lies within the discretion of the trial judge. United States v. Wilensky, 757 F.2d 594, 599-600 (3d Cir. 1985). Two federal statutes dictate the circumstances under which a federal judge should recuse: (1) where the judge has a personal bias or prejudice towards a party, see 28 U.S.C. §144, 28 U.S.C. § 455(b)(1); and (2) where the judge's "impartiality might reasonably be questioned," 28 U.S.C. § 455(a).

The first, 28 U.S.C. § 144, is applicable to federal district judges. That section provides that a judge should recuse if the party seeking recusal submits a "timely and sufficient affidavit" illustrating that the judge has a personal bias or prejudice towards a party. 28 U.S.C. § 144.

The second, 28 U.S.C. § 455(b)(1) applies to all justices, judges, and magistrates of the United States. It states that a judge should disqualify himself if he has a personal bias or prejudice towards a party. 28 U.S.C. § 455(b)(1). However, that section does not require submission of an affidavit. See id.; In re Beard, 811 F.2d 818, 827 (4d Cir. 1987). In addition, section 445(a) provides that a judge should remove himself if the judge's "impartiality might reasonably be questioned." 28 U.S.C.§ 455(a).

Here, Plaintiff did not submit an affidavit. Accordingly, the Court will consider whether recusal is appropriate under 28 U.S.C. § 455. As noted above, on May 9, 2012, Plaintiff Oliver filed a letter with the Court in which he stated that he is "requesting that the [C]ourt consider recusing it self [sic] from the case." Plaintiffs' reason for doing so is as follows:

> I read the courts [sic] opinion in the case of [Minatee v. Special Treatment Unit et al., Civ. No. 10-4654]. I believe the [C]ourt showed an animus towards me in that opinion and I was not a party in that case. In that opinion you indicated that I had a [sic] agenda, (I helped Plaintiff write the complaint). You warned Mr. Minatee to watch out for me. You stated that you believed I lied to the court in some of the alledged [sic] facts in that case. You gave no proof towards your allegation. The State of New Jersey trained me in 1992 to become a paralegal to asist [sic] prisoners in their legal matters, I don't ambelish [sic] the truth for any one [sic]. What a prisoner tells me is what I write.
>
> I filed a [w]rit of [m]andamus against Your Honor. In return you dismissed over 80 [r]esidents claims, with no concerns of their rights. I believe the [w]rit is the reason for the courts [sic] animus. I don't think that the [C]ourt will give me a fair hearing in this case. I request that the [C]ourt consider [r]ecusing it self [sic] from the case.

(CM/ECF No. 26, 1-2). Here, Plaintiff Oliver asserts that the Court should recuse itself because of either a personal bias or prejudice.

The only portion of the Opinion in that case concerning Oliver was the background section in which the Court detailed the plaintiff in that action's prior actions. The Court wrote as follows:

> **B. Minatee's Subscription to Quasi-Class Challenges Asserted in 2009**
> On October 19, 2010, the Clerk received a civil complaint docketed in Oliver v. Dept. of Human Serv., Special Treatment Unit ("Oliver"), Civil Action No. 09-5336 (JLL) (D.N.J.). That civil complaint was executed on behalf of a putative class consisting of civilly committed individuals ("SVPs") held pursuant to the Sexually Violent Predator Act ("SVPA"); these individuals were housed at the Special Treatment Unit ("S.T.U."), in Avenel, New Jersey. The draftor of that complaint, SVP Lorenzo Oliver ("Oliver"), made assertions on behalf of all other signatories of the complaint, including Minatee. Referring to Minatee, Oliver asserted "[o]n August 13, 2005, . . . Minatee filed a habeas corpus petition in federal court. [Oliver claims that Minatee's] petition was dismissed as time-barred." Docket Entry No. 2, at 3-7 (original footnotes and citations to docket entries omitted). Although the assertion made by Oliver was facially untrue, Minatee affixed his signature to Oliver's putative class complaint averring, under penalty of perjury, to the truthfulness of Oliver's allegations.

Minatee v. Special Treatment Unit, Civ. No. 10-4654, 2011 WL 5873055, *1 (D.N.J. Nov. 16, 2011). As the Court explained in a footnote, "Minatee's habeas petition was dismissed without prejudice as unexhausted rather than dismissed with prejudice as time-barred." Id. In a separate footnote, the Court explained to the plaintiff in that case as follows:

> The Complaint states that Oliver, the individual who . . . made misrepresentations to Judge Hayden discussed above, was "on the brief." The Court, therefore, takes this opportunity to stress that the legal determinations made on the basis of pleadings submitted in Minatee's name would necessarily affect Minatee's rights, rather than the rights of other individuals, *e.g.*, Oliver. The Court, therefore, urges Minatee to make sure that all pleading submitted in his name duly reflect the facts and challenges that Minatee himself wishes to assert. See e.g. Williams v. Doe, No. 07-5395 (SRC), 2008 U.S. Dist. LEXIS 1211, at *20 (D.N.J. Jan. 7, 2008) ("the court should be mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to [sign] a complaint") (citation omitted); see also Haines v. Jack Does 1-40, No. 07-5382 (SRC), 2008 U.S. Dist. LEXIS 1903, at *24 (D.N.J. Jan. 9, 2008) ("this Court expresses its grave concern about the possibility that [the] instant litigation is being hijacked by [another] plaintiff").

Id. at 2, n. 4.

Plaintiff's assertions that this Court displayed animus toward him, indicated that he had an agenda, and that the Court believed he lied are unfounded. Contrary to said assertions, the Court noted that the disposition of Minatee's previous case was mischaracterized. The Court additionally emphasized that is was important that the allegations in the complaint reflected the facts and claims that the plaintiff in that case wished to assert because his rights were at stake.

As Plaintiff is proceeding *pro se*, the Court will construe his filing liberally and also consider whether recusal is appropriate because my "impartiality might reasonably be questioned." The appropriate test is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonable be questioned." In re Kensington Int'l. Ltd., 368 F.3d 289, 301 (3d Cir. 2004). The inquiry is objective and considers whether a judge is actually impartial and whether there is an appearance of impartiality. See In re Bank of Northern Virginia, 418 F.3d 277, 320 (3d Cir. 2005). Plaintiff states that the Court dismissed over 80 residents' claims without concern for their rights. However, as summarized above, the Court's previous Opinion of September 22, 2010 outlined the reasons why the previous complaint could not proceed as filed under applicable law. (CM/ECF No. 2). Plaintiff does not point to anything that would lead an objective reasonable person to the conclusion that the undersigned's impartiality might be questioned. Accordingly, the Court declines to recuse itself from this case on either of the grounds discussed above.

## III. STANDARD OF REVIEW

It is well established that in reviewing a motion to dismiss a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn

therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not credit bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Id. Under Federal Rule of Civil Procedure 8(a), a complaint must set forth: 1) "a short and plain statement of the grounds upon which the court's jurisdiction depends," and 2) "a short and a plain statement of the claim showing that the pleader is entitled to relief." From the pleading, the Court must be able to draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A pro se complaint may be dismissed for failure to state a claim upon which relief may be granted if the allegations set forth by the plaintiff cannot be construed to supply facts in support of a claim entitling the plaintiff to relief. See Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name. Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 648 (E.D.Pa. 2010). Although the Third Circuit has traditionally construed *pro se* litigants' complaints liberally and in their favor, all parties must nonetheless follow the Federal Rules of Civil Procedure. Id.

While the Third Circuit has adopted a liberal approach to the amendment of pleadings, leave to amend a complaint should not be permitted if it would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213

F.3d 113, 115 (3d Cir. 2000)(citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997))(internal quotations omitted).

## IV. LEGAL DISCUSSION

Having decided that recusal is not warranted, the Court will turn to the pending motions to dismiss. In so doing, the Court will construe the sufficiency of Plaintiff's submissions liberally in light of his *pro se* status. Haines, 404 U.S. at 520-21.

### A. Motions at Bar

Defendants DHS, Merril Main, and Jennifer Velez argue that Plaintiff's Complaint is subject to dismissal based on the following: (1) none of the DHS Defendants is a "person" subject to suit within the meaning of 42 U.S.C. § 1983; (2) Plaintiff's claims are barred by the doctrine of sovereign immunity; (3) the Amended Complaint fails to state a claim of denial of access to the courts; (4) the DHS Defendants did not deny Oliver access to the Courts and they are entitled to qualified immunity; (5) those claims against Defendants Velez and Main based on a supervisory role cannot stand under section 1983. (DHS Defs.' Mot).

Defendant Hayman argues that Plaintiff's Complaint should be dismissed on the following grounds: (1) Plaintiff does not state a claim for violation of § of the ADA; (2) Plaintiff's remaining § 1983 claims allege no personal involvement; (3) Plaintiff's § 1983 claims against Defendant Hayman in his official capacity should be dismissed.

**B. Section 1983**

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

It has long been established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); see also Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976). Accordingly, New Jersey DHS is not a "person" within the meaning of a § 1983 suit. See e.g. Salerno v. Corzine, Civ. No. 06-3547, 2006 WL 3780587, at *3 (D.N.J. Dec. 20, 2006). Nor are Merril,Velez, and Hayman subject to liability under section 1983 on this basis. Will 491 U.S. at 71 ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Therefore, any attempt by Oliver to recover against the DHS Defendants or Defendant Hayman on this basis must be denied.

In addition, "section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Will, 491 U.S. at 66; Quern v. Jordan, 440 U.S. 332, 350 (1979) (section 1983 does not override a State's Eleventh Amendment immunity). The doctrine of sovereign immunity bars suit against states as well as state officials. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1984); Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900 (1997) (the Eleventh Amendment applies to state entities and officials where "the state is the real, substantial party in interest."). Similarly, the doctrine applies to individual state employees sued in their official capacity. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010). Here, Plaintiff seeks to hold liable a state agency, the New Jersey Department of Human Services, and individual state employees or officials. However, neither the State of New Jersey, DHS, nor DOC has consented to suit.

In any event, Plaintiff fails to plead a violation of a constitutional right, which is necessary to establish a claim under section 1983. Maher v. Gagne, 448 U.S. 122, 129 n.11 (1980); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) ("The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"). As observed by the Supreme Court, claims involving denial of access to courts generally fall within one of two categories. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first is those cases in which "systemic official action frustrates a plaintiff or plaintiff class in

preparing and filing suits at the present time." Id. The second category includes claims "not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 314-14. Despite the fact that the underlying circumstances vary, the Supreme Court explained: "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong . . . Our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Harbury, 536 U.S. at 415. In analyzing an access claim, courts employ the "nonfrivolous" test to determine whether the "'arguable' nature of the underlying claim is more than hope." Id. at 416. Thus, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-18.

In his Opposition to the DHS Defendants' motion to dismiss, Plaintiff asserted: "[w]hen [he] submitted his Amended [C]omplaint, he withdrew the claim for court access in his Amended [C]omplaint. Plaintiff has alleged in the [f]irst [c]ause of action that Defendants violated [P]laintiff's right to petition the government on his own [], by use of the Association for redress Plaintiff is not just talking about courts, but all State and federal government, the Legislator and the executive." (Pl.'s Opp'n. to DHS Defs.' Mot., 3-4).

Notably, the only allegations that could be construed as against the individual DHS Defendants are the following. Although Plaintiff submitted a proposal to Natali Baronne, who is not a named defendant, he did not receive a response within thirty days. He does not allege that

either of the individual DHS Defendants played a role in any decision regarding the Residents Legal Association. Similarly, as to the proposal sent to the DOC, Oliver does not allege that Defendant Hayman received the proposal; rather, he alleges that he received a response from the "Director of Operations for the [NJDOC]," denying the request.

Nor does Oliver successfully assert a claim under the Petition Clause of the First Amendment. In his Opposition to Defendant Hayman's motion to dismiss, Oliver submits that he states a claim against Hayman for failing to act after he received the proposal. (Pl.'s Opp'n. to Hayman Mot., 4).[4] However, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. For Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Finally, to the extent that Plaintiff attempts to hold the individual DHS Defendants and Defendant Hayman liable in their supervisory capacity, such claims are impermissible. As explained by the Supreme Court,

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution . . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities.

---

[4] The Court notes that Plaintiff also writes: "George Hayman deliberately and intentionally deprived plaintiff from exercising his right to Association by restricting him from creating a Residents Legal Association for the protection and advocacy of the right of residents of STU and it's Annex." Id. at 5 (no alteration). However, the allegations in the Complaint, even construed liberally, do not support this argument made in Plaintiff's opposition.

Iqbal, 129 S.Ct. at 1948-49. However, to the extent that Plaintiff is attempting to assert a claim against either individual Defendant based on individual action, Plaintiff's claim is dismissed without prejudice. Accordingly, Plaintiff's Amended Complaint will be dismissed in its entirety against the DHS Defendants.

**C. Americans with Disabilities Act**

Section 12132 of the ADA provides as follows: "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant Hayman urges that "[P]laintiff alleges no prerequisite 'disability' that would render any action, alleged or not, in possible violation of this statute." (Def. Hayman Opp'n., 7). Indeed, Plaintiff does not explicitly allege any disability.

Defendant Hayman continues that to the extent that Plaintiff is attempting to assert that his disability is his "court-designated status as a 'sexually violent predator,' which mandates his past and continued commitment in the STU, in part, due to a clinical sexual disorder," such is exempted from the definition of disability under the Act. Id. (citations omitted). The Definition of "disability" provides as follows: "Under this Act, the term 'disability' shall not include . . . transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 42 U.S.C. § 12211(b)(1). Therefore, even affording Plaintiff's Amended Complaint a liberal reading as required in light of his *pro se* status, Plaintiff's claim fails.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's application for recusal is denied. In addition, the Court grants both motions to dismiss. Defendant DHS is dismissed with prejudice. The Court dismisses the Amended Complaint as to the individual Defendants without prejudice insofar as Plaintiff is attempting to assert claims involving those Defendants' individual actions as opposed to their supervisory capacity.

An appropriate Order accompanies this Opinion.

Dated: 7/11/12

Jose L. Linares, U.S.D.J.