**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORENZO OLIVER,<br><br>Plaintiff,<br><br>v.<br><br>STEVE JOHNSON, ASST. SUPT.; BETTIE NARRIS, DIRECTOR,<br><br>Defendants. | Civil Action No. 2:09-CV-05336 (JLL)(JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Steve Johnson (hereinafter "Defendant Johnson")'s motion to dismiss *pro se* Plaintiff Lorenzo Oliver ("Plaintiff")'s Fourth Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant Johnson's motion is **GRANTED** and Plaintiff's § 1983 claims are dismissed *with prejudice* and Plaintiff's Rehabilitation Act claim is dismissed *without prejudice*.

**I.    BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff is a civilly committed resident confined pursuant to the New Jersey Violent Sexual Predators Act, N.J.S.A. 30:27.24 et seq. at the Special Treatment Unit ("STU") in Avenel, N.J. (FAC at ¶¶ 1, 3). Defendant Johnson is the Assistant Superintendent of the STU

and its Annex. (*Id.* at ¶ 4). Defendant Johnson is responsible for the custody, care and daily running of the institution. (*Id.*). Defendant Johnson is being sued in his individual capacity as to Plaintiff's § 1983 claims and in his individual and official capacity as to Plaintiff's Rehabilitation Act claim. (*Id.*).

On or about June 9, 2009 Plaintiff submitted a proposal to Defendant Johnson seeking to create a residents organization called the "Residents' Legal Association" ("RLA"). (*Id.* at ¶ 6). The proposal was signed by ninety-three of the residents of STU's Annex. (*Id.*). Plaintiff cites to New Jersey's Department of Corrections Administrative Law for the proposition that, Defendant Johnson, as the administrator's designee, had a duty to review Plaintiff's proposal within a reasonable period of time. (*Id.* at ¶ 10). The Department of Corrections has permitted inmates in several prisons to form inmate groups. (*Id.* at ¶ 11). However, according to Plaintiff, Defendant Johnson and the Administration at STU have not permitted any resident to create their own groups or join an independent association not created by or controlled by STU. (*Id.* at ¶ 12).

Plaintiff further alleges that, thirty days after submitting his proposal, he received no response from Defendant Johnson. (*Id.* at ¶ 15). In early July 2009, during a community meeting at STU's Annex, Defendant Johnson informed Plaintiff that he had received the proposal but had not reached a decision as to whether to permit the creation of the RLA. (*Id.* at ¶ 17). Subsequently, on July 21, 2009, Defendant Bettie Narris ("Defendant Narris"), Director of the Division of Operation for the Department of Corrections, denied Plaintiff's request to form the RLA. (*Id.* at ¶ 20). In particular, Defendant Narris's letter stated that, "[t]he Department of Public Advocate has been designed [sic] to represent the STU residents in legal matters, there for [sic] no further action is necessary at this time." (*Id.*).

Approximately one year after the denial of his request, Plaintiff was diagnosed by Dr. Rose Mary Valla Steward with cocaine and alcohol dependency on or around July 20, 2010. (*Id.* at ¶ 21). At this time, Plaintiff was also diagnosed with anti-social personality disorder. (*Id.*). Plaintiff claims that by way of these diagnoses he is deemed disabled under the Rehabilitation Act. (*Id.*). According to Plaintiff, he was discriminated against and not permitted to create the RLA on the basis of his alleged diagnoses. (*Id.* at ¶ 25).

Plaintiff asserts the following causes of action against Defendant Johnson: (1) violation of his right to association, freedom of expression and due process pursuant to the First and Fourteenth Amendments; and (2) discrimination in violation of section 504 of the Rehabilitation Act.

## II.  PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on October 19, 2009. (CM/ECF No. 1). This Court issued an Opinion on September 22, 2010 denying Plaintiff's request to proceed *in forma pauperis* and directed the Clerk to administratively terminate the action. (CM/ECF No. 2). On July 16, 2012 this Court dismissed Plaintiff's Amended Complaint for failure to state a claim. (CM/ECF Nos. 29-30). Thereafter, on August 22, 2012, Plaintiff filed a Second Amended Complaint ("SAC") in which he alleged various violations of 42 U.S.C. § 1983 and 29 U.S.C. § 794. (CM/ECF No. 31). The SAC leveled claims against Defendants Johnson, Clerke Bruno, George W. Hayman and Dr. Merril Main. (*Id.*). The Court dismissed the SAC with prejudice as to Defendant Main, and without prejudice as to Defendant Hayman. (CM/ECF Nos. 38-39). The SAC was subsequently dismissed with prejudice as to Defendant Bruno. (CM/ECF No. 46). On July 15, 2013, the Court dismissed the SAC without prejudice as to Defendant Johnson. (CM/ECF No. 60).

On August 28, 2013, Plaintiff submitted a third amended complaint to this Court. (CM/ECF No. 65). On September 9, 2013, Plaintiff moved for an extension of time to amend the complaint as to Defendant Hayman pursuant to this Court's prior Opinion. (CM/ECF No. 66). The Court denied Plaintiff's motion for an extension of time on October 1, 2013 without prejudice. (CM/ECF No. 69). On September 13, 2013, Defendant Johnson moved to dismiss Plaintiff's third amended complaint. (CM/ECF No. 67). Plaintiff requested additional time to answer Defendant's motion to dismiss, which this Court denied on October 7, 2013. (*See* CM/ECF Nos. 70, 71). The Court's October 7th Order administratively terminated the motion to dismiss without prejudice pending Plaintiff's filing of an appropriate motion to amend by the November 1, 2013 deadline. (CM/ECF No. 71). Thereafter, on October 28, 2013, Plaintiff filed an application for an extension of time to file an Amended Complaint. (CM/ECF No. 73). Plaintiff's application was denied without prejudice on November 7, 2013. (CM/ECF No. 74). The Court's November 7th Order further specified that Plaintiff shall file any new application to amend the Complaint on or before December 13, 2013 and that Plaintiff shall include a copy of the Amended Complaint that Plaintiff seeks to file. (*Id.*). Thereafter, Plaintiff filed his Fourth Amended Complaint ("FAC") on March 26, 2014. (CM/ECF No. 84). Defendant Steve Johnson again moved to dismiss Plaintiff's FAC for failure to state a claim on April 9, 2014. (CM/ECF No. 86). On May 14, 2014, Plaintiff filed an opposition to Defendant Johnson's motion. (CM/ECF No. 87).

### III.  LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515

4

F.3d 224, 234 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] *pro se* complaint, however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("*[P]ro se* complaints in particular should be construed liberally.").

## IV. DISCUSSION

The claims asserted in Plaintiff's FAC can be categorized as follows: (1) constitutional claims brought pursuant to 42 U.S.C. § 1983 stemming from the denial of Plaintiff's request to form the RLA; and (2) violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794. In moving to dismiss Plaintiff's FAC, as to the claims asserted against him, Defendant Johnson makes the following arguments: (1) Plaintiff's § 1983 claims fail to allege specific facts establishing personal involvement and are based solely on an impermissible theory of *respondeat superior*; (2) the FAC fails to state a claim for First Amendment liability; (3) Defendant Johnson is entitled to qualified immunity; (4) Plaintiff's Rehabilitation Act claim fails to allege that Plaintiff was discriminated against solely on the basis of his disability; and (5) Plaintiff fails to

make the requisite showing for an award of punitive damages. (*See generally,* Def.'s Br.; CM/ECF No. 86).

A. Section 1983 Claims

Plaintiff alleges that Defendant Johnson violated his constitutional rights by way of denying Plaintiff's request to form the RLA and sues Defendant Johnson only in his individual capacity under 42 U.S.C. § 1983. (*See* FAC at ¶ 4). Defendant Johnson argues that Plaintiff's § 1983 claims should be dismissed because Plaintiff fails to allege facts establishing that Defendant Johnson was personally involved in the alleged wrongdoings. (Def.'s Br. 8). More specifically, Defendant Johnson argues that Plaintiff's § 1983 claims are based solely on an impermissible theory of *respondeat superior*. (*Id.*). Plaintiff opposes Defendant Johnson's argument on the basis that: (1) Defendant Johnson had "knowledge of Plaintiff's constitutional rights to Association" (Pl.'s Oppn Br. 4; CM/ECF No. 87); and (2) Defendant Johnson was personally involved in denying Plaintiff his right to association because "Defendant was indifferent to Plaintiff's Associational Rights." (Pl.'s Oppn Br. 5).

As a preliminary matter, 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. It bears mentioning that § 1983 does not create substantive rights, but rather "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Russo v. Ryerson* (citing *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir. 1996)). A claim under § 1983 has two critical elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a [ ]

6

person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Powell v. Ridge,* 189 F.3d 387, 400 (3d Cir. 1999).

> As this Court explained in its previous Opinions, the Supreme Court has held that:
>
>> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* … [A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. … [P]urpose rather than knowledge is required to impose [constitutional] liability on … an official charged with violations arising from his or her superintendent responsibilities.

*Iqbal,* 556 U.S. at 676; *see also Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability."). The Third Circuit has explained that "personal involvement" on a § 1983 claim, "can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Such particularity "need only allege the conduct, time, place, and person responsible." *Solan v. Ranck,* 326 Fed. App'x 97, 101 (3d Cir. 2009) (internal quotations omitted) (citing *Evancho v. Fisher,* 423 F.3d 347, 353-354 (3d Cir. 2005)).

Here, Plaintiff claims that Defendant Johnson "failed to make any policies or to take action to prevent Plaintiff from being deprived of his right to create … a Residents Organization." (FAC at ¶ 14). However, Plaintiff's allegations fail to assert personal involvement by way of personal direction or actual knowledge and acquiescence of the alleged wrongdoing by Defendant Johnson. Rather, Plaintiff alleges that Defendant Johnson is the Assistant Superintendent of the STU and its Annex (*Id.* at ¶ 4), and that as such Defendant Johnson had a duty to "review [Plaintiff's] proposal … within a reasonable period of time." (*Id.*

7

at ¶ 10). Plaintiff also asserts that, Defendant Johnson is "responsible for the custody, care and daily running of the institution ... [and also bears responsibility for] S.T.U.'s employees, policies and procedures." (*Id.* at ¶ 4). Plaintiff maintains that Defendant Johnson is the Administrator's Designee, and that pursuant to N.J.A.C. 10A:12-2.1(a) "the Administrator or designee shall approve, disapprove or limit the formation ... of a [sic] inmate group consistent with the provisions of this chapter and any applicable management procedures." (*Id.* at ¶¶ 9, 10). Plaintiff alleges that in July 2009, during a community meeting at STU's Annex, Plaintiff asked Defendant Johnson if he had received Plaintiff's proposal and if Defendant Johnson had reached a decision. (FAC at ¶ 17). At this time, Defendant Johnson informed Plaintiff that he received the proposal but had not reached a decision as to whether to permit the creation of the RLA. (*Id.*). Shortly thereafter, on July 21, 2009, Defendant Narris denied Plaintiff's request. (*Id.* at ¶ 20).

Defendant Johnson's mere knowledge of the proposal does not suffice to establish personal involvement. *See Iqbal*, 556 U.S. at 677 (holding that "purpose rather than knowledge is required" to impose liability on an official charged with violations arising from his superintendent responsibilities). Plaintiff argues in his opposition brief that Defendant Johnson kept delaying his response to the proposal, thereby prompting Defendant Narris to respond negatively to the proposal. (*See* Pl.'s Oppn Br. 5). However, Plaintiff fails to make such an assertion in his Complaint and therefore, the Court is precluded from considering such an allegation. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). In light of the fact that the Court previously dismissed Plaintiff's § 1983 claims against Defendant Johnson without prejudice for failure to allege personal involvement,

the Court now dismisses Plaintiff's § 1983 claims against Defendant Johnson *with prejudice*. (*See* CM/ECF No. 60 at 8).

      B.      <u>Whether Defendant Johnson is Entitled to Qualified Immunity</u>

Even if the Court were to determine that Plaintiff has alleged facts sufficient to establish personal involvement under § 1983, Defendant Johnson would be entitled to qualified immunity for the reasons set forth below.

As an initial matter, "[a] government official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (internal quotations omitted) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In addressing qualified immunity, "we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted."" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001)). It bears mentioning that courts have "discretion to tackle the 'clearly established' issue first." *Lamont*, 637 F.3d at 182.

The Supreme Court has characterized its freedom of association jurisprudence as follows:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution

> guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts v. U.S. Jaycees,* 468 U.S. 609, 617-618 (1984). "The right to associate for expressive purposes is not, however, absolute." *Id.* at 623. Generally, "infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* Plaintiff is civilly committed under New Jersey's SVPA. (FAC at ¶ 3). It is well established that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romero,* 457 U.S. 307, 321-322 (1982). Accordingly, courts should balance the individual's liberty interests against relevant state interests while deferring to the judgment exercised by qualified professionals. *Id.*

However, the Third Circuit has held that a plaintiff "convicted of a crime who is being detained in the Special Treatment Unit because of his classification as a sexually violent predator under New Jersey's Sexually Violent Predator Act, [maintains a status] similar to that of a prisoner." *Rivera v. Rogers,* 224 F. App'x. 148, 150-51 (3d Cir. 2007); *see also Waterman v. Farmer,* 183 F.3d 208, 215 (3d Cir. 1999) (holding that "it is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders"). Thus, while Plaintiff is not incarcerated, his associational rights are limited by virtue of his civil commitment under the SVPA. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125-26 (1977) (holding that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment ... [p]erhaps the most obvious First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside

10

of prison walls"). Therefore, First Amendment jurisprudence interpreting prisoners' rights is applicable here. *See Waterman v. Farmer,* 183 F.3d at 213-14. The Supreme Court explained in *Turner v. Safley,* "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987).

Here, Plaintiff alleges that Defendant Johnson is the Assistant Superintendent of the STU and its Annex. (FAC at ¶ 4). Plaintiff asserts that Defendant Johnson "failed to make any policies or to take action to prevent the Plaintiff from being deprived of his right to create, join or operate the Residents Organization" (FAC at ¶ 14) within the STU, thereby, "depriving him of his right to Association." (FAC at ¶ 23). However, Plaintiff fails to direct the Court to any STU regulation which impinges on Plaintiff's right to association and further fails to allege that any regulations governing the creation, organization, and functioning of inmate groups within State correctional facilities are unconstitutional. *See* N.J.A.C. 10A:12-1.1; *see also Wiggins v. New Jersey Dept. of Corrections,* 2209 WL 4546817 (App.Div. Dec 3, 2009) (citing *Sandin v. Conner,* 515 U.S. 472, 478 (1995)) (holding that the regulations governing formation of inmate groups "strike the appropriate balance between prison management concerns and fairness to inmates").

Even if the Court were to determine that Plaintiff established a viable freedom of association claim, the Court must then determine whether the constitutional right at issue is clearly established. *See Lamont,* 637 F.3d at 182. Thirty days after submitting the proposal to Defendant Johnson, Plaintiff's request had not been answered. (*Id.* at ¶ 15). Plaintiff relies on N.J.A.C. 10A:12-2.1(b) for the proposition that the Administrator or designee shall give a proposed inmates group written notice of approval or disapproval to formulate and/or conduct

11

activities as soon as possible after receiving the request. (*Id.* at ¶ 16). Defendant Johnson argues that it was not clear that failure to provide a response to the request within thirty days would constitute a violation of either the due process clause or the First Amendment. (Def.'s Br. 14). Under N.J.A.C. 10A:12-2.1(b):

> The Administrator or designee shall give a proposed inmate group written notice of approval or disapproval to formulate and/or conduct an activity(ies) as soon as possible after receiving the request.

It bears mentioning that the statute does not require Defendant Johnson to respond to Plaintiff's request within thirty days but instead "as soon as possible." (*Id.*). Accordingly, the Court agrees that it was not clear that failure to respond to Plaintiff's request within thirty days would result in a violation of Plaintiff's constitutional rights, in particular his right to freedom of association.

As such, Defendant Johnson is entitled to qualified immunity and Plaintiff's freedom of association and due process claims are dismissed. *See Jones,* 433 U.S. at 132 ("[First Amendment associational rights] may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, ... interfere with the legitimate penological objectives of the prison environment."). This Court previously discussed the Supreme Court's freedom of association jurisprudence at length and dismissed Plaintiff's First and Fourteenth Amendment claims without prejudice. (CM/ECF No. 38). In light of the fact that this is Plaintiff's Fourth Amended Complaint and that this Court previously laid out the pleading requirements for § 1983 claims premised on violations of the First and Fourteenth Amendments, the Court now dismisses Plaintiff's § 1983 claims against Defendant Johnson *with prejudice.*

C.     Rehabilitation Act Claim

Plaintiff also asserts that Defendant Johnson's actions were in violation of § 504 of the Rehabilitation Act. Defendant Johnson argues that dismissal of Plaintiff's Rehabilitation Act claim is warranted because Plaintiff fails to allege facts to support an allegation that he was discriminated against solely because of his disability. (Def.'s Br. 16). Plaintiff argues in opposition that Defendant Johnson discriminated against Plaintiff because of four alleged disabilities: paraphilia (non-consent); cocaine dependence; alcohol abuse; and anti-social personality disorder. (Pl.'s Oppn Br. 17). The Court previously dismissed this claim as to all other Defendants on the basis that Plaintiff failed to allege a disability within the meaning of the Rehabilitation Act. (CM/ECF No. 38). The Court also dismissed Plaintiff's Rehabilitation Act claim on the basis of his classification as a sexually violent predator against Defendant Johnson *with prejudice*. (CM/ECF No. 60). However, the Court provided that Plaintiff was not precluded from bringing a Rehabilitation Act claim insofar as he could allege a disability within the meaning of the Rehabilitation Act. (*See id.*).

As an initial matter, § 504 provides in relevant part as follows:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . .

29 U.S.C. § 794(a). Under the Rehabilitation Act, a "handicapped individual" is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002,

1009 (3d Cir. 1995) (citing 29 U.S.C. § 706(7)(B)). The Rehabilitation Act additionally provides that "[f]or the purposes of [29 U.S.C. § 794] ... the term 'individual with a disability' does not include an individual on the basis of (i) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders; ... (iii) psychoactive substance use disorders resulting from current illegal use of drugs." 29 U.S.C. § 705(20)(F)(i).

The Third Circuit has held that a plaintiff may establish a § 504 violation where, "(1) he is a 'handicapped individual' under the Act, (2) he is 'otherwise qualified' [to participate in the federally funded program or activity], (3) that he was excluded [from participation] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Strathie v. Dep't of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983). A plaintiff cannot make out a claim under § 504 merely by proving "(1) that he was denied some service and (2) he is disabled." *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) (citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998) (holding that the disability must be the cause of the discrimination or denial of benefits or services)).

Here, Plaintiff alleges that he was diagnosed with and suffers from a cocaine and alcohol dependency as well as an anti-social personality disorder. (FAC at ¶ 21). Plaintiff's diagnosed cocaine dependency, alcohol dependency and anti-social personality disorder (*id.*) do not exclude Plaintiff from protection under the Rehabilitation Act. *See Oxford House, Inc. v. Twp. of Cherry Hill,* 799 F.Supp. 450, 459 (D.N.J. 1992) (recognizing that the Rehabilitation Act "has consistently been interpreted by the courts to cover alcoholics and drug addicts"); *Sullivan v. City of Pittsburgh, Pa.*, 811 F.2d 171, 182 (3d Cir. 1987) ("[c]ase law establishes that alcoholics

are handicapped within the meaning of § 504"); *Olson v. Gen. Elec. Astrospace,* 966 F.Supp. 312, 316 (D.N.J. 1997) (holding that "[depression and other mental disorders] have also been deemed to be handicaps as that term is defined in the Rehabilitation Act").

Plaintiff alleges that Defendant Johnson discriminated against Plaintiff solely because of his disabilities by not permitting Plaintiff to create the RLA. (FAC at ¶ 25). However, as Defendant Johnson argues and this Court agrees, Plaintiff fails to allege any facts supporting the allegation that Plaintiff was discriminated against solely, or even in part, because of his alleged handicaps. (*See* Def.'s Br. 16); *see also Andrew M.,* 490 F.3d at 350 (holding that a § 504 claim requires that "[t]he state must have [excluded plaintiff] for the sole reason that [he was] disabled"). Thus, Plaintiff's Rehabilitation Act claim against Defendant Johnson fails to state a plausible claim. The Court previously dismissed Plaintiff's Rehabilitation Act claim premised on Plaintiff's "classification as a sexually violent predator" with prejudice, and further dismissed Plaintiff's Rehabilitation Act claim without prejudice provided that Plaintiff could allege a disability within the meaning of the Act. (CM/ECF No. 60 at 9). Accordingly, Plaintiff's Rehabilitation Act claim as brought against Defendant Johnson is dismissed *without prejudice* only insofar as Plaintiff can establish that his disability was the sole basis for Defendant Johnson's denial of the RLA.

D.   Punitive Damages

Lastly, Defendant Johnson argues that Plaintiff fails to set forth the requisite showing to warrant an award of punitive damages. (Def.'s Br. 17). Plaintiff does not address Defendant Johnson's argument for denial of punitive damages. (*See generally,* Pl.'s Oppn Br.).

The Third Circuit has explained that, "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous." *Savarese*

*v. Agriss,* 883 F.2d 1194, 1204 (3d Cir. 1989); *see also Green v. Corzine,* CIV. 09-1600 AET, 2010 WL 1133445 at *7 (D.N.J. Mar. 22, 2010). Defendant Johnson argues that because Plaintiff's Complaint is devoid of any facts indicating that Defendant Johnson acted in a reckless or callous manner, Plaintiff fails to set forth a valid claim for punitive damages. (*See* Def.'s Br. 17-18). Furthermore, Plaintiff himself alleges that it was Defendant Narris not Defendant Johnson who ultimately denied Plaintiff's request to form the RLA. (FAC at ¶ 20). In any event, as this Court has concluded that Plaintiff's Complaint fails to state *any* facially plausible claims against Defendant Johnson, the issue of whether said Defendant could be subjected to punitive damages arising out of said claims is, at this juncture, moot.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's § 1983 claims are dismissed *with prejudice* and Plaintiff's Rehabilitation Act claim is dismissed *without prejudice* as to Defendant Johnson. Plaintiff's failure to file an amended complaint on or before **July 31, 2014** will result in dismissal of his Rehabilitation Act claim *with prejudice.* An appropriate Order accompanies this opinion.

JOSE L. LINARES
U.S. DISTRICT JUDGE

Dated: June 11, 2014